**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **BRIAN COLLISTER,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | |
| | § | **NO. 1:21-CV-01112-LY** |
| **TEGNA INC., WFAA-TV, INC., CAROLYN** | § | |
| **MUNGO and ELLEN CROOKE,** | § | |
| | § | |
| **Defendant.** | § | |
| | § | |

## DEFENDANT WFAA-TV INC. AND TEGNA INC.'S PARTIAL MOTION TO DISMISS UNDER RULE 12(B)(6), MOTION TO TRANSFER VENUE, AND SUPPORTING BRIEF

Defendants WFAA-TV, Inc. ("WFAA") and TEGNA Inc. ("TEGNA") (collectively, the "Defendant Entities") submit this Partial Motion to Dismiss Under Rule 12(b)(6), Motion to Transfer Venue, and Supporting Brief.

As explained below, Defendant Entities respectfully request the Court to dismiss Plaintiff Brian Collister's ("Collister") retaliation claims under Title VII and the Age Discrimination in Employment Act because those claims are inadequately pleaded. Upon doing so, the Defendant Entities further respectfully request the Court to transfer the remaining claims to the Northern District of Texas, Dallas Division. Defendant WFAA is a Dallas television station. Defendant Carolyn Mungo works for WFAA in Dallas. The claims in this case predominantly involve Dallas witnesses. This case can and should proceed in Dallas, and transfer is warranted under 28 U.S.C. § 1404(a).

## I.      INTRODUCTION AND ALLEGATIONS RELEVANT TO 12(B)(6) MOTION

The pro se Complaint in this case is cursory and confusing. *See* Compl., ECF No. 1. Collister alleges WFAA did not hire him. *Id.* at § 8a. Why he thinks that was unlawful is not clear.

It is irrefutable that Collister initially checked the box for Title VII (employment discrimination on the basis of race, color, sex, religion, or national origin). *See id.* at § 1. It is also irrefutable that on page 3 of the Complaint, Collister also checked boxes indicating that his job rejection was because of age or a prior discrimination complaint (in his words: "Refusal to hire because of EEOC complaint"). *See Id.*at § 7. Thus, liberally construed, the Court can only conclude that Collister asserts discrimination and retaliation claims under Title VII and the ADEA.

Whatever his legal claims may be, the facts in the Complaint are sparse. The entirety of the factual allegations is as follows:

- "Refusal to hire because of EEOC complaint," *id*. at § 7; and

- "I applied for the position of 'TEGNA Texas Investigative/Deep Dive Multi-skilled Journalist' and was informed on 2/13/2020 they hired for the position. I was never contacted or interviewed. Younger and less experience hired," *id.* at § 8a.

As explained below, the Court should dismiss Collister's retaliation claims against the Defendant Entities under Title VII and the ADEA. Collister has not pleaded sufficient facts to give rise to a plausible inference that he was victim of unlawful retaliation.

## II.      FACTUAL BACKGROUND FOR MOTION TO TRANSFER[1]

1.      TEGNA is a television broadcast company of news, entertainment and public interest shows that are broadcasted over the air, cable, and online. Defendant Crooke currently serves as TEGNA's Senior Vice President of News. Ellen Crooke Declaration ("Declaration") at

---

[1] The Defendant Entities rely on the facts in this section solely in support of their motion to transfer pursuant to 28 U.S.C. § 1404(a).

¶ 1, Exhibit A. During the relevant time period, TEGNA operated eleven (11) television stations in Texas, including WFAA, which is the ABC affiliate for the Dallas-Fort Worth Area. *Id.* at ¶ 3.

2.      The WFAA station is located at 606 Young St, Dallas, Texas 75202. *Id.* at ¶ 4. WFAA's employees predominantly live and work in the Dallas area, including Defendant Mungo, WFAA's Vice President and Station Manager. *Id.* at ¶ 5.

3.      In 2019, Collister, as a third-party independent contractor, contracted with WFAA to provide investigative reporter services through his company, Investigative Network. *Id.* at  ¶ 6. Collister provided one story to WFAA under the agreement. However, the business relationship between Collister and WFAA did not go any further. *Id.* Mungo was Collister's point of contact for the project he provided to WFAA and, as such, she is familiar with his qualifications, or lack thereof. *Id.* at ¶ 7.

4.      Subsequently, the Texas Deep Dive investigative reporter unit ("TDD Unit") was launched, which was an investigative team focused on Texas-based stories for TEGNA's Texas stations, including WFAA. *Id.* at ¶ 8. In September 2019, while still operating his own reporter investigation company, Collister applied for a multi-skilled journalist position in the TDD Unit, along with others. *Id.* at ¶ 9. Collister, however, was not selected for an interview or a position. *Id.* at ¶ 11. The job posting listed Dallas, Texas as the location for the position. *Id.* at ¶ 9.

5.      A panel of three (3) individuals interviewed and decided to hire two internal candidates. *Id.* at ¶ 10. The interviewers and their locations are as follows: Ellen Crooke (Roswell, Georgia); Eric Valadez (Dallas, Texas); and Ryan Wood (Dallas, Texas). *Id.* at ¶¶ 10, 12-14. The Defendant Entities anticipate that each of the interviewers will testify to several pertinent issues in this case, including but not limited to: whether Collister was qualified for the multi-journalist

position, the qualifications of the internal candidates that were selected, and the non-discriminatory

reason(s) Collister was not interviewed or hired for the multi-skilled journalist position.

6.      In addition to the interviewers and Defendant Mungo, there are other significant

witnesses in this case—for instance, Mark Smith, an Investigative Producer for WFAA. *Id.* at ¶

15. The Defendant Entities believe that Mark Smith has relevant knowledge concerning Collister's

qualifications for the multi-journalist position.

7.      Collister has also identified several potential witnesses in his Complaint. *See*

Compl. at §8b. These potential witnesses and their locations are as follows: Mark Smith (Dallas,

Texas), Joe Ellis (Austin, Texas), and Jeremy Rogalski (Houston, Texas). *Id.*; Declaration at ¶¶

15-17, Exhibit A. Collister's fourth potential witness, James Keith, was previously employed by

TEGNA's San Antonio station, KENS-TV; however, the Defendant Entities are unable to verify

his location at this time. *Id.*

8.      For the reasons set forth below, Plaintiff's discrimination claims should be

transferred to the Northern District of Texas, Dallas Division pursuant to 28 U.S.C. § 1404(a).

## III.    ARGUMENTS & AUTHORITIES

**A.    The Retaliation Claims Should be Dismissed Pursuant to Fed. R. Civ. P. 12(b)(6)**

### i.    *Legal Standard*

9.      A claimant must plead facts that "state a claim to relief that is plausible on its face."

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility when the

plaintiff pleads "factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of

misconduct, the complaint has alleged — but it has not 'shown' — 'that the pleader is entitled to

relief.'" *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). The Court, drawing on its judicial experience and common sense, must undertake the "context-specific task" of determining whether the plaintiff's allegations "nudge" his claims against the defendant "across the line from conceivable to plausible." *Id*. at 680, 683; *see Dishon v. Berkshire Hathaway Auto.*, No. EP-18-CV-241-PRM, 2018 U.S. Dist. LEXIS 225045, at *3 (W.D. Tex. 2018) (using this standard to analyze a pro-se plaintiff's complaint, the court granted the defendant's motion to dismiss because the "[p]laintiff's allegations [were] wholly conclusory.").

10.     When ruling on a motion to dismiss under Rule 12(b)(6), a court must accept "the well-pleaded facts as alleged" in the complaint as true. *Plotkin v. IP Axess, Inc.*, 407 F.3d 690, 696 (5th Cir. 2005). A court, however, need not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions," which are not enough to defeat a Rule 12(b)(6) motion to dismiss. *Id*. (citing *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004)).

### ii.     *Collister fails to state a claim for retaliation under Title VII or the ADEA.*

11.     As noted above, it appears Collister asserts retaliation claims against the Defendant Entities under Title VII and the ADEA.

12.     The anti-retaliation provision of Title VII provides that it is unlawful for an employer "to discriminate against any of his employees or applicants for employment . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).

13.     The ADEA's anti-retaliation provision makes it unlawful for an employer "to discriminate against any of his employees or applicants for employment because such individual,

member or applicant for membership has opposed any practice made unlawful by this section, or because such individual, member or applicant for membership has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter." 29 U.S.C. § 623(d).

14.     Collister failed to plead facts creating a plausible inference that the Defendant Entities violated either of these prohibitions. The only allegation Collister pleads in support of his retaliation claim is the following: "Refusal to hire because of the EEOC complaint." Compl. at § 7. This allegation is a legal conclusion, not a fact, and is not sufficient to carry Collister's pleading burden under Federal Rule of Civil Procedure 8. *Plotkin*, 407 F.3d at 696 (noting that a court need not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions").

15.     The retaliation claims should be dismissed for failure to state a claim.

**B.     The Remaining Claims Should Be Transferred to The Northern District of Texas, Dallas Division.**

16.     In addition to dismissing the retaliation claims against the Defendant Entities, the Court should transfer the remaining claims to the Northern District of Texas, Dallas Division pursuant to 28 U.S.C. § 1404(a).

17.     Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought. . . ." 28 U.S.C. § 1404(a). The party seeking transfer bears the burden of demonstrating (1) that the court to which transfer is sought is a district where the case could have originally been brought, and (2) that the transfer to that court is in the interest of justice and will serve the convenience of the parties and witnesses. *In re Volkswagen AG,* 371 F.3d 201, 203 (5th Cir. 2004) ("*In re Volkswagen I*").

18.     Section 1404(a) gives courts broad discretion to transfer an action to a forum if it is "clearly more convenient" than the forum chosen by the Plaintiff and when the claim "could have been filed" in the transferee district or division. *See id.*; *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 313 (5th Cir. 2008) ("*In re Volkswagen II*"). The moving party must show good cause for the venue transfer. *See In re Volkswagen II*, 545 F.3d at 315. In order to assess "good cause," the court employs "the private and public interest factors" test. *Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963).

19.     The private factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive." *In re Volkswagen I*, 371 F.3d at 203. The public factors are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *In re Volkswagen I*, 371 F.3d at 203.

20.     Ultimately, when another venue is "clearly more convenient" based on the private and public considerations, the movant has shown good cause and the case not only may, but should, be transferred. *In re Volkswagen II*, 545 F.3d at 315; *Bd. of Regents v. Dauben, Inc.*, No. A-08-CA-635-LY, 2008 U.S. Dist. LEXIS 128098, at *5–6 (W.D. Tex. Dec. 24, 2008).

        *i.*     ___Venue is Proper in the Northern District of Texas, Dallas Division___.

21.     A prerequisite to transferring a case under Section 1404(a) is a finding that the case "might have been brought" in the place to which transfer is sought. *In re Volkswagen II*, 545 F.3d at 312. ADEA claims are governed by the general federal venue provision (28 U.S.C. § 1391). *See*

*Florer v. Elec. Data Sys. Corp.*, No. 3: 03-CV-1175-H, 2003 U.S. Dist. LEXIS 16630, at *3 n.2 (N.D. Tex. 2003). Under 28 U.S.C. § 1391, a civil action may be brought in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391. Title VII claims, however, are governed by a special venue provision. *See Allen v. U.S. Dep't of Homeland Sec.*, 514 F. App'x 421, 422 (5th Cir. 2013). Pursuant to 42 U.S.C. § 2000e-5, Title VII claims may be brought in any judicial district in the State:

> [I]n which the unlawful employment practice is alleged to have been committed, in the judicial district in which the employment records relevant to such practice are maintained and administered, or in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice . . . .

42 U.S.C. § 2000e-5(f)(3).

22. Here, the decision to hire two internal applicants over Plaintiff was not made in Austin. Rather, the hiring decision for the investigative team was made by three (3) individuals, one (1) of which worked at the WFAA station located in Dallas, Texas. Declaration at ¶ 10, Exhibit A. In a discriminatory failure-to-hire case (like this one), the alleged unlawful employment practice is deemed to have occurred in the federal judicial district where the decision not to hire was made. *See e.g., Caballes v. AirTouch Cellular*, No. 3:03-CV-2706-H, 2004 U.S. Dist. LEXIS 6632, at *2-6 (N.D. Tex. 2004) (noting that the "alleged retaliatory act, *i.e.,* the decision not to hire [the plaintiff], occurred in California" and transferring the case to the United States District Court for

the Central District of California, Southern Division). The decision not to hire Collister was not made in Austin. Therefore, because the decision not to hire Collister was partially made in Dallas (with no ties to Austin), a substantial part of the events or omissions giving rise to the purported unlawful employment practice is alleged to have been committed in the Northern District of Texas, Dallas Division.

23.     As such, Collister's ADEA and Title VII failure-to-hire claims could have been brought in the Northern District of Texas, Dallas Division. *See* 28 U.S.C. § 1391 ("a civil action may be brought in [. . .] a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . ."); 42 U.S.C. § 2000e-5(f)(3) (dictating that Title VII claims may be brought "in any judicial district in the State in which the unlawful employment practice is alleged to have been committed. . . .").[2]

### ii.     *The Northern District of Texas, Dallas Division Is A "Clearly More Convenient" Venue.*

24.     This Lawsuit should be transferred to the Northern District of Texas, Dallas Division under 28 U.S.C. § 1404(a) because that court is "clearly more convenient" than the Western District of Texas, Austin Division. Thus, it would be in the interest of justice for this Court to exercise its broad discretion to transfer the action to the Dallas Division.

#### a.     The "relative ease of access to sources of proof" weighs in favor of transfer.

---

[2] In addition to the grounds above, Collister's ADEA claims could have also been brought in the Northern District of Texas because Defendants WFAA and Mungo are subject to personal jurisdiction in the Northern District. *See* 28 U.S.C. § 1391 (3). Further, the job posting listed Dallas, Texas as the location for the position and, had Collister been hired, he would have worked in Texas serving TEGNA's Texas new stations. *See* Declaration at ¶ 8, Exhibit A. Thus, Collister's Title VII claims could have been brought in the Northern District of Texas on these additional grounds. *See* 42 U.S.C. § 2000e-5(f)(3).

25.     The first factor under the private interests test—the relative ease of access to sources of proof—weighs in favor of transferring the case to the Northern District of Texas, Dallas Division. The sources of proof are more easily accessible in the Dallas Division.

26.     Except for Collister, there are no significant witnesses in Austin.[3] Specifically, most potential witnesses work and/or live in the Dallas Division, including one of the named employee-Defendants (Carolyn Mungo), as well as other TEGNA and WFAA employees *Id.* at ¶¶ 5, 13-15. Parenthetically, when Collister applied for the position in question, he we was aware that the job posting listed the position as a Dallas-based job.

**b.     The "cost of attendance for willing witnesses" weighs in favor of transfer.**

27.     The cost of attendance for case proceedings in Austin for willing witnesses would be greater, both in terms of time and expense, than it would be for witnesses to attend proceedings in Dallas. The majority of the likely defense witnesses work and live in Dallas, Texas, *see* Declaration at ¶¶ 13-15, Exhibit A, which is over 200 miles from Austin. These witnesses include: (1) individuals who reviewed Plaintiff's and/or other applicants' applications as well as those who have knowledge regarding the job position at issue (i.e., Eric Valadez and Ryan Wood); and (2) WFAA employees who are familiar with Plaintiff's qualifications and who Plaintiff named in his Complaint as either a defendant (i.e., Defendant Mungo) or a witness (i.e., Mark Smith). *Id.* at ¶¶ 7, 15. Presumably, Plaintiff will seek significant discovery and testimony from these individuals.

28.     Because the witnesses predominantly live and work in Dallas, they will have to travel over 200 miles and three hours (or more) by car to reach the Austin courthouse. Thus, a

---

[3] As stated, Collister has identified Joe Ellis as a potential witness in this case. *See* Compl. at § 8b. Mr. Ellis does not have relevant knowledge as he was not involved in the hiring process for the TDD unit. Declaration at ¶ 17, Exhibit A. Thus, although Mr. Ellis resides in Austin, Texas he is not a significant witness in this case. *Id.*

single trip to the Austin courthouse would likely require these witnesses to suffer significant cost in terms of lost productivity from missing work. *See Volkswagen II*, 545 F.3d at 316 ("Witnesses [living more than 100 miles from the forum] not only suffer monetary costs, but also the personal costs associated with being away from work, family, and community."); *Volkswagen I*, 371 F.3d at 205 ("Additional distance means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment."). Such costs are unnecessary, especially given that a substantial part of the events leading to this case did not occur in the Austin Division. In addition, because Defendant Mungo is Vice President and Station Manager and Wood is an Executive Producer, the burden on WFAA's operations if they had to repeatedly miss multiple days of work to provide testimony in connection with this matter would be significant.

29.    Other than Collister, no significant witnesses live in or near Austin, Texas. However, Plaintiff's location does not outweigh the significant expense other willing witnesses would incur in attending proceedings in Austin. Additionally, if this case is transferred to Dallas, Defendants are willing to take reasonable steps to minimize expense to Collister (for instance, by deposing him in Austin so he would not need to travel).

### c.    The "availability of compulsory process to secure the attendance of witnesses" factor weighs in favor of transfer.

30.    Several significant witnesses live and work over 100 miles from the Austin Division Courthouse. These witnesses and their location include the following: Eric Valadez

(Dallas, Texas); and Ryan Wood, (Dallas, Texas); Mark Smith (Dallas, Texas); Declaration at ¶¶ 13-15, Exhibit A.[4]

31.     Therefore, it is likely that many probable witnesses either party would need to compel to appear for trial, a hearing, or a deposition, live outside the range of the subpoena power of the Austin Division. *See* Fed. R. Civ. P. 45 (c) (1) ("For a Trial, Hearing, or Deposition. A subpoena may command a person to attend a trial, hearing, or deposition only as follows: (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person.").[5] By contrast, more witnesses would be subject to compulsory process in the Northern District of Texas, Dallas Division. Thus, this factor weighs in favor of transfer.

### d.     The "catch all" factor weighs in favor of transfer.

32.     Finally, the fourth private interest factor, which examines all other practical problems that make trial of a case easy, expeditious, and inexpensive, weighs in favor of transfer to the Northern District as well. Collister has sued a Dallas television station (WFAA) and a Dallas resident (Defendant Mungo) in a case involving predominantly Dallas residents and employees. The parties and this Court will face additional, unnecessary scheduling issues if the case proceeds in Austin. *Volkswagen I*, 371 F.3d at 205 ("[T]he task of scheduling fact witnesses so as to minimize the time when they are removed from their regular work or home responsibilities gets

---

[4] As stated, Collister has identified four (4) potential witnesses. *See* Compl. at §8b. Two of the witnesses live and reside more than 100 miles from the Austin Division Courthouse. These individuals and their locations are as follows: Mark Smith (Dallas, Texas) and Jeremy Rogalski (Houston, Texas). Declaration at ¶¶ 15-17, Exhibit A.

[5] Rule 45(c)(1)(B) goes on to state that a subpoena may command a person to attend a trial only: "(B) **within the state where the person resides**, is employed, or regularly transacts business in person, **if the person is** (i) a party or a **party's officer**." FED. R. CIV. P. 45(c)(1)(B). Although all but one of the potential witnesses (i.e., Defendant Crooke) resides in Texas, this exception is not applicable in the present case. Declaration at ¶¶ 5, 12-17, Exhibit A. Rather, the potential witnesses that reside in Texas are employees of WFAA or one of Tegna's Texas stations. *See id.* These individuals are therefore outside the range of the Court's subpoena powers. *See Barthe v. Mut. of Omaha Ins. Co.*, No. 17-182, 2018 U.S. Dist. LEXIS 97476, at *16 (E.D. La. 2018) (holding that the trial subpoenas did not comply with the location requirements of 45(c)(1) because they sought to compel the appearance of employees who were not officers of the company, were not parties to the litigation, and resided more than 100 miles from the court).

increasingly difficult and complicated when the travel time from their home or work site to the court facility is five or six hours one-way as opposed to 30 minutes or an hour."). Thus, this private interest factor weighs in favor of transfer as well.

> e.  The "local interest in having localized interests decided at home" factor weighs in favor of transfer.

33.    This public interest factor weighs in favor of transferring the case to the Dallas Division because that court has a greater interest in having the issues decided there. The Dallas Division is the proper "home" for this case, given that (1) most witnesses live and work in the Dallas Division; (2) WFAA is a Dallas television station that broadcasts in the Dallas-Fort Worth Area; and (3) the decision not to interview or hire Collister was partially made in Dallas; however, the decision did not occur in Austin. *See* Declaration at ¶¶ 3, 5, 10-14, Exhibit A. Except for Collister residing in Austin, this case has almost no connection to the Austin Division, and therefore the Austin Division has little local interest in having the issues in this case decided by its courts.

> f.  The remaining public factors are neutral and do not outweigh the private interest factors supporting transfer.

34.    First, the public factor of "administrative difficulties flowing from court congestion" is neutral because there are no material administrative difficulties in transferring this case to the Northern District, Dallas Division. Further, courts have held that this factor is speculative and should be afforded less weight. *See, e.g., Super Interconnect Techs. v. Google LLC*, No. 6:21-CV-00259-ADA, 2021 U.S. Dist. LEXIS 242299, at *30 (W.D. Tex. Nov. 5, 2021) (recognizing court congestion as "the most speculative" factor, and affording it commensurately less weight).

35.     Additionally, the "familiarity of the forum with the law that will govern the case" factor is neutral. Plaintiff has alleged that Defendants violated Title VII and the ADEA by hiring a younger and less experienced individual. Compl. at § 8a. Both the Western and Northern Districts are equally fit to apply United States federal employment law. This factor is neutral. *See Jackson v. GEHL Co.*, No. 2-09-CV-48, 2009 U.S. Dist. LEXIS 51877, at *9 (E.D. Tex. June 19, 2009) ("Both the Tyler division and this division are familiar with the law that could govern this case. Therefore, the Court finds this factor to be neutral as to transfer.").

36.     Finally, the "avoidance of unnecessary problems of conflict of laws" factor is neutral. There are no conflict of laws problems present in this case. Collister alleges claims under Title VII and the ADEA, which the Austin Division and the Dallas Division are equally equipped to apply. This factor is neutral. *See Kirkpatrick v. ARM WNY LLC, No. 3:15-CV-1818-L, 2015 U.S. Dist. LEXIS 72894,* at *7 (N.D. Tex. June 5, 2015) (where most of the section 1404(a) factors are neutral but none of the factors favor *maintaining* a case in the transferor court, the balance will likely weigh in favor of transfer).

37.     None of the public factors outweigh the private factors supporting transfer. As such, the Defendant Entities respectfully request that the Court transfer the lawsuit to the Northern District of Texas, Dallas Division.

### III. CONCLUSION

Defendants WFAA-TV, Inc. and TEGNA Inc. respectfully request that the Court dismiss Plaintiff's retaliation claims under Title VII and the ADEA and then transfer this case and the remaining discrimination claims to the Northern District of Texas, Dallas Division.

Respectfully submitted,

**JACKSON WALKER LLP**


By: */s/ David Schlottman*

David Schlottman
State Bar No. 24083807
2323 Ross Avenue, Suite 600
Dallas, Texas 75201
(214) 953-6000
(214) 953-5822 - Fax
Email: dschlottman@jw.com

**ATTORNEYS FOR DEFENDANTS
TEGNA, INC., WFAA-TV, INC.,
CAROLYN MUNGO AND
ELLEN CROOKE**


## CERTIFICATE OF SERVICE

This is to certify that on this 7th day of March 2022, a true and correct copy of the foregoing document was served via email and certified mail, return receipt requested, upon:

Brian Collister
295 Desert Willow Way
Austin, TX 78737
briancollister@yahoo.com


*/s/ David Schlottman*

David R. Schlottman